Stephen M. **GALLAGHER** and Kevin Mouser, individually and as representatives of all other individuals similarly situated, Appellants–Plaintiffs,

v.

**INDIANA STATE ELECTION BOARD;** Alan Mills, Joseph Donnelly, and Donald Cox, in their official capacities as members of the Indiana State Election Board; Marion County Election Board; Marion County Board of Voter Registration, Appellees–Defendants.

No. 49A02–9007–CV–431.

Court of Appeals of Indiana, Second District.

Oct. 16, 1991.

John Wood, Bamberger & Feibleman, Richard A. Waples, Indiana Civil Liberties Union, Indianapolis, for appellants-plaintiffs.

Linley E. Pearson, Atty. Gen., Kimberlie Antrim Forgey, Deputy Atty. Gen., Indianapolis, for State appellees-defendants.

J. Murray Clark, Clark, Quinn, Moses & Clark, Indianapolis, for appellee-defendant Marion County Election Bd.

SHIELDS, Judge.

Stephen M. Gallagher and Kevin Mouser, individually and as representatives of all other individuals similarly situated, appeal the trial court's judgment holding voting provisions of the Indiana Code do not violate the Indiana Constitution or the United States Constitution.

We reverse and remand for further proceedings.

### ISSUES

1. Whether Ind. Const. art. 2, § 2 creates a "day of record" for purposes of voting, whereby the precinct in which a voter maintains residency within the state on the thirtieth day prior to an election is that voter's voting precinct, even if the voter moves from that precinct prior to the election.

2. Whether the statutory provisions that differentiate between the franchise allowed registered voters who move to a new voting precinct within thirty days of an election violate the Equal Protection Clause of the United States Constitution.

### BACKGROUND

A voter who moves to a new precinct must have his or her registration transferred to the new precinct no later than the twenty-ninth day prior to the date of an election to enable the voter to vote in the new precinct. *See* IC 3–7–3–5 (1991 Supp.). As a result, a resident of a voting precinct who is otherwise qualified cannot vote in the new precinct if he or she became a precinct resident within thirty days prior to an election. However, the new precinct resident may vote for certain offices and ballot issues in his or her former precinct. If the registered voter moves to a new precinct in another county, the franchise is limited to the offices of President and Vice President at the former precinct. *See* IC 3–7–4–1 et seq. (1988). If the registered voter moves to a new precinct within the same county and requests a transfer of registration before 4:00 p.m. on the last Monday prior to the election, the franchise at the former precinct is unlimited—the voter is allowed to vote for all offices and ballot issues at the voter's former precinct. *See* IC 3–7–8–2(c) (1991 Supp.).[1] However, if a voter who moves to a new precinct within the same county either fails to make a timely request for transfer or is unable to make a timely request for transfer (e.g., moves to the new precinct after the transfer deadline), the voter is allowed to vote in his or her former precinct only for the offices of President and Vice President. *See* IC 3–7–4–1 et seq. (1988).

### FACTS

Appellants Gallagher and Mouser represent the class of voters who move to a new precinct within thirty days prior to an election and are limited to voting for the of-

---

**1.** IC 3–7–8–2(c) was amended in 1991. Prior to that time, the deadline for intra-county movers to request a registration transfer was the last Friday before the election. *See* IC 3–7–8–2(c) (1988).

fices of President and Vice President at their former precincts.

Stephen M. Gallagher was a resident and registered voter of Precinct 20 in Marion County. After Gallagher moved to Hendricks County on October 11, 1988, he contacted the Marion County Board of Voter Registration and the Indiana State Election Board and asked where he would be voting that year. Gallagher was told he would have to return to Marion County where he would be allowed to vote only for the offices of President and Vice President. On November 8, 1988 Gallagher voted for President and Vice President at Precinct 20 in Marion County. Gallagher represents himself and subclass A: persons who are Indiana residents and are registered voters who change their residence from a precinct in one county to a precinct in another county on or within thirty days of an election.

Kevin Mouser was a resident and registered voter of Precinct 6 in Marion County. On October 29, 1988 Mouser moved to another precinct in Marion County. On Monday, November 7, 1988 Mouser informed the Board of Voter Registration of his change of address and was told that in order to vote he would have to execute an affidavit and return to his former precinct where he could vote only for the offices of President and Vice President.[2] Mouser represents himself and subclass B: persons who are Indiana residents and are registered voters who change their residence from one precinct in a county to another precinct in the same county on or within thirty days of an election and who fail or are unable to comply with the provisions of the Indiana Code which allow intra-county movers to return to their former precinct and vote for all offices and ballot issues.

The Defendant–Appellees (collectively referred to as the Election Board) are: the Indiana State Election Board, which is established under IC 3-6-4-1 et seq. (1988) and is responsible for administering the election laws of the State of Indiana and other duties relating to the conduct of elec-

tions in Indiana; Alan Mills, Joseph Donnelly, and Donald Cox in their official capacities as members of the Indiana State Election Board; the Marion County Election Board, which is established pursuant to IC 3-6-5-1 et seq. (1988) and is responsible for conducting all elections in Marion County and for performing duties prescribed in IC 3-6-5-14 (1991 Supp.) and other applicable statutes; and the Marion County Board of Voter Registration, which is established pursuant to IC 3-7-2-2 (1991 Supp.) and is responsible for registering voters in Marion County according to the Indiana Election Code and other applicable statutes.

Gallagher originally brought this action prior to the 1988 election, complaining the limited franchise afforded him violates the Indiana Constitution and the United States Constitution. At that time, he requested a preliminary injunction against the Marion County Election Board to allow him to exercise the full franchise at his former precinct in the 1988 election, which the trial court denied. After the election, Mouser intervened as an additional plaintiff and joined Gallagher in the present class action suit seeking declaratory and permanent injunctive relief, damages, costs and attorney fees. The trial court held that the challenged statutory provisions violate neither the Indiana Constitution nor the United States Constitution.

### DISCUSSION

#### I.

■ Gallagher and Mouser argue the Indiana Code provisions that limit the franchise of the two subject subclasses violate Ind. Const. art. 2, § 2. The central issue concerning their claim is the meaning of Ind. Const. art. 2, § 2, which provides:

> Every citizen of the United States, of the age of eighteen (18) or more, who has been a resident of a precinct thirty (30) days immediately preceding such election, shall be entitled to vote in that precinct.

**2.** At the time Mouser notified the Board of Voter Registration, the deadline for requesting a registration transfer, which if timely made would have allowed Mouser to return to his

former precinct and exercise an unlimited franchise, was the last Friday before the election. *See* footnote 1, *supra.*

Gallagher and Mouser argue this language creates a "day of record" whereby the precinct in which a registered voter resides on the thirtieth day prior to an election is that voter's voting precinct, even if the voter moves to a different precinct prior to the election. To support this argument, Gallagher and Mouser emphasize the legislative history surrounding Ind. Const. art. 2, § 2. The Election Board, however, argues the language in Ind. Const. art. 2, § 2 is not ambiguous and thus, construction based on its legislative history is unwarranted and inappropriate. It reads Ind. Const. art. 2, § 2 as unequivocally requiring precinct residency for thirty *continuous* days prior to an election.

In determining the meaning of Ind. Const. art. 2, § 2, we first decide whether the provision is plain and unambiguous and thus not in need of construction. *See, e.g., Superior Construction Co. v. Carr* (1990), Ind., 564 N.E.2d 281, 284 (courts do not interpret legislation that is clear and unambiguous on its face); *Burks v. Bolerjack* (1981), Ind., 427 N.E.2d 887, 889 (the use of rules of statutory construction is not warranted where the language is unambiguous). The key language at issue is: "Every citizen ... *who has been a resident of a precinct thirty (30) days immediately preceding such election....*" Ind. Const. art. 2, § 2. The phrase *"has been* a resident ... thirty (30) *days"* indicates the criterion involves a *period of time* rather than a specific point in time. Thus the language of Ind. Const. art. 2, § 2 is unambiguous and clearly does not provide a "day of record" for purposes of voting and to that extent we agree with the trial court.

## II.

◼ Gallagher and Mouser also argue the voting right their subclasses receive under the statutory scheme, when compared to the voting right given other voters who move to a new precinct within thirty days of an election, violates the Equal Protection Clause of the United States Constitution.

The parties disagree over the level of scrutiny that should be employed in assessing the constitutionality of the distinction drawn between the subclasses that Gallagher and Mouser represent and those registered voters who move to a new precinct within thirty days prior to an election who retain their full franchise. Gallagher and Mouser argue voting is a fundamental right and strict equal protection scrutiny is required. The Election Board argues the Supreme Court's decision in *Holt Civic Club v. City of Tuscaloosa* (1978), 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292, requires application of low-level equal protection scrutiny in this case. However, the Court's rationale for applying low-level equal protection scrutiny in *Holt* is not relevant to this case. The distinction in voting rights at issue in *Holt* was based on the residency of one group verses the lack of residency of the group that was not allowed to vote. Although the Indiana Constitution defines the right to vote in terms of precinct residency, the voters who enjoy the right to return to their former precinct and exercise an unlimited franchise are, like Gallagher and Mouser, not residents of the precinct in which they vote. Therefore, the lack of precinct residency cannot justify the distinction in voting rights created by the statutory provisions at issue and provides no basis for employing low-level equal protection scrutiny in this case.

We hold the proper standard is strict scrutiny. The right to vote has long been accorded the status of a fundamental right. *See Dunn v. Blumstein* (1972), 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (describing the right to vote as " 'a fundamental political right ... preservative of all rights' "). It is this right that Gallagher and Mouser seek, wherever they may exercise it. Therefore, we must determine whether the Indiana Code's distinctions in voting rights provided to similarly situated groups are necessary to promote a compelling state interest. *See id.* at 337, 92 S.Ct. at 1000.

◼ We are unaware of any compelling state interest and the Election Board has not offered one to explain the distinction between the voting rights provided the voters Gallagher and Mouser represent and those voters who move to a new precinct

within thirty days of an election whose franchise is unlimited. Consequently, the statutory provisions that create the varying voting rights cannot survive strict equal protection scrutiny and are unconstitutional.

Even if low-level equal protection analysis was appropriate in this case, we would find the statutory provisions Gallagher and Mouser challenge violate the Equal Protection Clause. To survive low-level equal protection scrutiny, the distinction created by the statutory provisions needs only to be rationally related to a legitimate state interest. *Pennell v. City of San Jose* (1988), 485 U.S. 1, 14, 108 S.Ct. 849, 859, 99 L.Ed.2d 1. A statutory distinction between groups will survive low-level equal protection scrutiny if "any set of facts reasonably may be conceived to justify" the distinction. *Holt,* 439 U.S. at 74, 99 S.Ct. at 392. The Election Board has attempted to explain the distinction by claiming the distinction is justified, at least with respect to the variance between intra-county and inter-county movers, by the legitimate state interest in administrative convenience. According to the Election Board, voters who move intra-county and make a timely request for transfer of registration will have their transfer handled by only one county voter registration office, whereas those who move inter-county must have their transfer handled by two county voter registration offices. However, the county voter registration offices do not act on transfer requests prior to the election. Because any administrative convenience in transferring the intra-county movers' registration would occur only *after* the election has taken place, the administrative convenience justification bears no rational relationship to the distinction in voting rights between voters who move intra-county and make a

timely transfer request and *either* of the subclasses Gallagher and Mouser represent. Further, we cannot conceive any legitimate state interest that would justify such a distinction.[3]

We hold the sections of the Indiana Code that limit the franchise of an otherwise qualified voter who moves to a new precinct within thirty days of an election to voting for only the President and Vice President are unconstitutional under the Equal Protection Clause. Therefore, the judgment of the trial court is reversed and the cause remanded to the trial court with instructions to enjoin the Election Board from enforcing those provisions and to consider Gallagher's and Mouser's claims for additional relief.

STATON and BUCHANAN, JJ., concur.

---

3. The Election Board also argues the subclass represented by Mouser cannot raise its equal protection challenge because members of the subclass failed to make a timely registration transfer request, and thus were responsible for their own disenfranchisement. We note that the subclass Mouser represents includes not only those who fail to make a timely request but

also those who *cannot* make a timely request (e.g., those who move after the deadline expires). *See* Record at 288. Therefore, we need not discuss this argument.