## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 03 2015, 6:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Julie Wright,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 3, 2015

Court of Appeals Case No.
49A02-1406-CR-392

Appeal from the Marion Superior Court.
The Honorable Amy M. Jones, Judge.
The Honorable David Hooper, Magistrate.
Cause No. 49F08-1210-CM-72708

**Baker, Judge.**

[1] Julie Wright appeals her conviction for Conversion,[1] a class A misdemeanor. Wright argues that the trial court erred when it excluded testimony from Melissa Williamson that should have been admitted pursuant to Indiana Rule of Evidence 801(d)(1)(B). Finding no error, we affirm.

## Facts

[2] On October 20, 2012, Wright drove Williamson to a Walmart store on the south side of Indianapolis. Wes Foddrill, a loss-prevention officer at Walmart, noticed the two women enter the store. Wright and Williamson went to the sporting goods area, where they selected three pairs of football gloves from the shelves. The women next entered the greeting card aisle, where Foddrill observed Wright cutting the tags off the gloves with scissors she had taken from a shelf. The two women then walked through the shoe and purse section of the store, and Foddrill saw Williamson put the gloves into her jacket pocket. Foddrill overheard Williamson ask Wright if she could see the gloves and heard Wright respond that she could not.

[3] Wright and Williamson then went into the women's restroom, and, when they emerged, Foddrill saw the scissors Wright had used to cut the tags off the gloves protruding from Williamson's purse. The women then walked past all points of sale. At that point, Foddrill stopped them and identified himself. Wright did not cooperate with Foddrill; she threw her purse down and dumped out its

---

[1] Ind. Code § 35-43-4-3.

contents, saying that she had taken nothing. Williamson hid the stolen gloves under the crane game in the arcade room, and she put the scissors on one of the shelves in the pharmacy area.

[4] On October 29, 2012, the State charged Wright with conversion, and a bifurcated bench trial was held on April 28 and May 12, 2014. At trial, Williamson testified that she was solely responsible for taking the gloves and that Wright knew nothing about it. Wright then attempted to introduce evidence that Williamson had also told Foddrill that she alone was responsible at the time the women were confronted at the Walmart. When Wright attempted to introduce Williamson's testimony regarding the statement to Foddrill, the following colloquy occurred:

> Defense: Eventually you were apprehended. Is that correct?
> Williamson: Yes.
> Defense: Okay did you make any statements to Lost Prevention?
> State: Objection Your Honor, hearsay as to whatever statement she made to Lost Prevention.
> The Court: Okay well first off-
> Defense: I-
> The Court: It's a little premature. I don't know if it's a yes or no. Did you make statements to Lost Prevention? I will allow that. Yes or no?
> Williamson: Yes.
> The Court: All right.
> Defense: Okay.
> The Court: The objection is hearsay, all right. What are you eliciting this for?
> Defense: Judge, not for the truth of the matter asserted.

The Court: Oh I assume you are if she said she didn't do anything.

State: Yeah.

The Court: That Wright didn't do anything.

Defense: Well it's my belief that we're allowed to ask the witness a question. We're always allowed to present evidence. It's always relevant. It's always important if a person is accused of a crime did do something and if there's a statement that would tend to bolster that, that's certainly very relevant and we're always allowed to have that be considered in trial.

State: I'm not objecting relevancy, I'm objecting hearsay.

The Court: right.

State: It's a statement . . . out-of-court statement.

The Court: And it's . . . it's tricky how you do it because she can't testify as to the guilt or innocence of someone but she can testify that she . . . she already testified as to what she did. I mean, there is no jury here. You're not going to harpoon me so you just tell me what you think she is going to say.

Defense: I'm going to ask . . . well first, I'm going to ask her if she admitted that she took these things. That was what I was going to ask her first.

The Court: Okay that's . . . that is . . . that is inadmissible.

Defense: Second-

The Court: A, to prove she took it. B, it's bolstering because she already admitted what she did.

Defense: Okay.

The Court: It's and cumulative, so I'll sustain it.

Defense: Well and then I was going to say did you tell Lost Prevention that Miss Wright didn't do it or did you hear her make any statement?

. . .

The Court: Okay all right any statements to the witness made about to Lost Prevention about whether she did or didn't do are inadmissible. Any statements that the defendant made at that time are admissible.

Tr. p. 43-5. Therefore, the evidence of Wright's testimony concerning her statement to Foddrill was excluded as hearsay.

[5] On May 12, 2014, the trial court found Wright guilty of conversion. It sentenced her to 365 days in jail, with 361 days suspended, and four days executed as time served. In addition, the trial court ordered Wright to complete twenty-four hours of community service. Wright now appeals.

## Discussion and Decision

[6] Wright argues that the trial court erred when it excluded evidence of Williamson's statement to Foddrill that Williamson alone was responsible for taking the gloves. The decision to admit or exclude evidence is within the trial court's sound discretion. *Johnson v. State*, 831 N.E.2d 163, 168–69 (Ind. Ct. App. 2005). We will reverse only upon a showing of manifest abuse of discretion that results in the denial of a fair trial. *Id.* We do not reweigh the evidence and will consider conflicting evidence in a light most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005).

[7] Wright contends that Williamson's testimony was admissible because it was not hearsay pursuant to Indiana Rule of Evidence 801(d)(1)(B). Rule 801(d)(1)(B) provides that a statement is not hearsay if it is the prior statement of a declarant witness who testifies and is subject to cross-examination and the statement: "is consistent with the declarant's testimony, and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying."

[8] In order for Williamson's statement to fall within the confines of Rule 801(d)(1)(B), it must have been offered to rebut a charge, express or implied, that Williamson recently fabricated it or acted from a recent improper influence or motive in testifying. See Modesitt v. State, 579 N.E.2d 649, 653 (Ind. 1991) (Subsection (B) allows prior consistent statements to be introduced to rebut charges of 'improper influence or motive.' (quoting Indiana Evidence Rule 801(d)(1)(B) as it read at that time)). Additionally, this Court has noted that:

> [C]ases have made clear that there is a difference between merely challenging a witness's credibility versus making an express or implied charge of fabricated testimony or improper influence or motive. See Horan v. State, 682 N.E.2d 502, 511-12 (Ind. 1997). If there has only been general impeachment of a witness's credibility, then prior consistent statements by the witness are hearsay and not admissible as substantive evidence. Id.

Corbally v. State, 5 N.E.3d 463, 469 (Ind. Ct. App. 2011). Therefore, we must determine if there was an express or implied charge of fabricated testimony or improper influence or motive.

[9] Wright concedes that the State did not expressly state that Williamson had a motive to fabricate until closing argument, after Wright had offered Williamson's testimony. Appellant's Br. p. 8. However, Wright asserts that the State did imply such a motive when it objected to Williamson's testimony regarding her statements to Wright during the crime on a hearsay basis. When the State objected, the trial court considered whether Williamson's statements were the statements of a co-conspirator, to which the State responded, ". . . this wouldn't be a statement in furtherance. It'd be a statement debunking a[n]

alleged conspiracy." Tr. p. 38. Wright argues that this comment by the State implied that the State had taken the position that there was a conspiracy, and "the implication is that anything Williamson said to rebut the existence of a conspiracy is a fabrication." Appellant's Br. p. 8. Indeed, Wright argues that the very fact that the State prosecuted her despite Williamson's statements shows that the State's position was that Williamson was a liar. *Id.*

[10] We cannot believe that the prior consistent statements of a witness are admissible under Evidence Rule 801(d)(1)(B) simply because the State takes the position that a witness lacks credibility. *See Corbally*, 5 N.E.3d at 469. We find that it would be quite a stretch to determine that the State made a charge that Williamson had recently fabricated her testimony or acted from a recent improper influence or motive merely because it asserted that the defense was trying to elicit a statement "debunking a[n] alleged conspiracy." Tr. p. 38. At the time the trial court excluded the evidence of Williamson's statement to Foddrill, Williamson was being questioned on direct examination. Tr. p. 44. The State had not yet had an opportunity to impeach Williamson, and, therefore, did not assert a charge of fabricated testimony or improper influence or motive.[2] We find that the trial court was within its discretion to exclude Williamson's testimony.

---

[2] We also find instructive the District Court's discussion of prior consistent statements in *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 944 (N.D. Ill. 2006), in which that Court discussed the common law prohibition on the "introduction of prior consistencies on direct

The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.

---

examination to bolster the witness's testimony, since the credibility of a tale told on direct examination is not rendered more trustworthy or probable by its earlier repetitions."