## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Matthew D. Barrett
Matthew D. Barrett, P.C.
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Luis Torres-Reynoso,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 30, 2015

Court of Appeals Case No.
79A02-1412-CR-867

Appeal from the Tippecanoe
Circuit Court

The Honorable Donald L. Daniel,
Judge

Trial Court Cause No.
79C01-1311-FA-11

**Kirsch, Judge.**

Luis Torres-Reynoso pleaded guilty to conspiracy to commit dealing in cocaine[1] as a Class A felony, six counts of dealing in cocaine,[2] each as a Class A felony, and eight additional drug-related offenses.[3] The trial court accepted Torres-Reynoso's plea of guilty and sentenced him to an executed term of thirty-five years for each of the seven Class A felony convictions, ordering those sentences to run concurrently. The trial court did not impose a sentence for the remaining convictions. The trial court denied Torres-Reynoso's motion to correct error. Torres-Reynoso raises the following restated issues on appeal:

> I. Whether Torres-Reynoso was denied the effective assistance of trial counsel;
>
> II. Whether the trial court abused its sentencing discretion by relying on improper aggravating factors; and
>
> III. Whether Torres-Reynoso's aggregate thirty-five-year executed sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

---

[1] *See* Ind. Code §§ 35-48-4-1(a)(2), 35-41-5-2.

[2] *See* Ind. Code § 35-48-4-1(a)(2).

[3] We note that, effective July 1, 2014, the Indiana General Assembly enacted a new version of each of the criminal statutes under which Torres-Reynoso was charged. Because Torres-Reynoso committed his offenses before July 1, 2014, we will apply the appropriate statute in effect at that time.

## Facts and Procedural History

[3] This case arises from a criminal investigation of Torres-Reynoso by the Lafayette Police Department and the Federal Drug Enforcement Administration ("DEA"). Between May and November 2013, Torres-Reynoso delivered approximately twelve ounces of cocaine and over three pounds of marijuana, in seven separate buys, to Lafayette Police Department Detective Jason Walters, who was acting undercover. In the first six buys, Detective Walters bought a total of eight ounces of cocaine and over one pound of marijuana and paid Torres-Reynoso $9,100.[4] In the final buy on November 21, 2013, Torres-Reynoso delivered four ounces of cocaine and two pounds of marijuana. No payment was made; instead, Detective Walters arrested Torres-Reynoso and his accomplice, Saul Muñoz.

[4] Torres-Reynoso was interviewed by the police that same night. After initially denying involvement, he admitted that he sold drugs to Detective Walters and, later, consented to a search of his home; during that search, the police found more cocaine. Torres-Reynoso identified his drug suppliers as Muñoz and a man named Peña. A search of Muñoz's home uncovered two pounds of cocaine. With the help of Torres-Reynoso, police arranged to purchase cocaine from Peña the following day. When police arrived at the designated location,

---

[4] Torres-Reynoso was charged with multiple counts of dealing in cocaine in an amount greater than three grams. During the guilty plea hearing, Torres-Reynoso pleaded guilty to having repeatedly sold Detective Walters about one ounce of cocaine. *Guilty Plea Hr'g* at 26. The State, however, clarified that one ounce is equal to roughly 28 grams of cocaine. *Id*.

Peña fled in his car and, subsequently, on foot. When Peña was finally apprehended, police found no cocaine on his person.

[5] On November 27, 2013, and as later amended, Torres-Reynoso was charged with the following fifteen drug-related counts: (1) seven Class A felonies (one count of conspiracy to commit dealing in at least three grams of cocaine and six counts of dealing in in at least three grams of cocaine); (2) two Class C felonies (one count of possession of cocaine[5] and one count of dealing in a substance represented to be a controlled substance[6]); (3) five Class D felonies (one count of conspiracy to commit dealing in marijuana,[7] two counts of dealing in marijuana,[8] one count of maintaining a common nuisance,[9] and one count of "dealing in a substance represented to be cocaine," *Guilty Plea Hr'g* at 18), and (4) one Class A misdemeanor (dealing in marijuana[10]). In January 2014, attorney Jim Brugh ("Brugh") filed an appearance as counsel for Torres-Reynoso.

[6] On August 4, 2014, Torres-Reynoso pleaded guilty, without a written plea agreement, to all fifteen counts. About a month and a half later, and in

---

[5] *See* Ind. Code § 35-48-4-6(b)(1)(A).

[6] *See* Ind. Code §§ 35-48-4-4.5, -4.6.

[7] *See* Ind. Code §§ 35-48-4-10(b)(1)(B), 35-41-5-2.

[8] *See* Ind. Code § 35-48-4-10(b)(1)(B).

[9] *See* Ind. Code § 35-48-4-13(b).

[10] *See* Ind. Code §35-48-4-10(a)(1)(c).

preparation for the impending sentencing hearing, Brugh filed a motion to shorten the time for the State to respond to Torres-Reynoso's request for production of documents that revealed the identities of any officers involved in or reports related to the investigation and arrest of Peña. Specifically, Brugh intended to argue as a mitigating factor at sentencing that Torres-Reynoso had been cooperative with police, identified Peña as a drug dealer, and helped arrange the controlled drug buy that lead to Peña's arrest. Brugh argued that "[e]vidence of [Torres-Reynoso's] cooperation with law enforcement on the day of his arrest . . . and his cooperation with the Drug Task Force to set up drug dealer [Peña for a controlled drug buy] . . . is relevant to sentencing." *Appellant's App.* at 41.

[7] During a hearing, the State urged the court to deny the motion to shorten time on the basis that Brugh had every report the State had, the reports relating to Peña were not relevant to Torres-Reynoso's sentencing, the State never denied that Torres-Reynoso provided helpful information, and Brugh had already subpoenaed officers involved in the case to testify at Torres-Reynoso's sentencing hearing. The trial judge, Judge Donald L. Daniel ("Judge Daniel") asked Brugh why he needed additional information if the State agreed that Torres-Reynoso's cooperation with police was a mitigator. Brugh responded that police reports might provide a fuller picture of Torres-Reynoso's participation and, "if there is one more kernel of detail that I can add out of the police report I have a duty to my client in good representation." *Status Hr'g* at 6. Noting the State's agreement that Torres-Reynoso was "entitled to a

mitigator" for the help he had given police, the trial court denied his motion to shorten time. *Id*. at 5.

[8] On October 15, 2014, the trial court held a sentencing hearing, at which Torres-Reynoso, his fiancée, his father, and his pastor all testified. Brugh also offered testimony from two DEA agents and three police officers regarding the assistance Torres-Reynoso's provided law enforcement to arrange the controlled drug buy from Peña. One officer and two DEA agents were allowed to testify. During the testimony of the fourth law enforcement witness, West Lafayette Police Officer Jonathan Eager, Judge Daniel stated that he had heard "three witnesses testify for more than a half an hour . . . as to cooperation by [Torres-Reynoso]." *Sentencing Hr'g* at 69. Noting that the State had previously agreed that Torres-Reynoso's cooperation with law enforcement was a mitigating factor, Judge Daniel stated that another witness, testifying to Torres-Reynoso's cooperation, was not necessary. Even so, Judge Daniel indicated, "If you have some area to get into which you believe would influence this Court I would be happy to hear about it." *Id*.

[9] In response, Brugh revealed his intention to have Officer Eager and another officer testify because they "were physically present when [Torres-Reynoso] was using his cell phone to communicate with Peña. I simply want the Court to know specifically how that worked." *Id*. Officer Eager and the other witness did not testify; however, Officer Eager was allowed to say that he saw Torres-Reynoso communicate with Peña using his cell phone to text and speak once. Brugh made an offer of proof as to the testimony of the other officer, stating

that she speaks Spanish and, with Torres-Reynoso's assistance, she had sent some texts to Peña to arrange the controlled buy. *Id.* at 71.

[10] At the sentencing hearing, Brugh requested a sentence of twenty years with fourteen years suspended. The State requested a forty-year executed sentence, and the Tippecanoe County Probation Department recommended a sentence of thirty-five years in the Department of Correction. Brugh argued at length in support of a reduced sentence, identifying multiple specific mitigating circumstances for the trial court to consider. The trial court found the following to be aggravating factors in determining Torres-Reynoso's sentence: his criminal history of two prior misdemeanors and a pending felony case; his past illegal drug use, notwithstanding that it "was not as significant as frequently happens"; his use of an alias at work; the nature and circumstances of the crime; and the number of transactions and the amount of illegal drugs involved in those transactions. *Id.* at 97; *Appellant's App.* at 97. Mitigating factors found by the trial court included the facts that Torres-Reynoso had taken responsibility for his actions by pleading guilty and expressing remorse; had cooperated with law enforcement; has minor children, including one with special needs, that depend on him; has a history of being employed, including nine consecutive years with one employer; and had family and friends supporting him in court. The trial court accepted Torres-Reynoso's pleas of guilty and entered convictions on the seven Class A felonies and six of the

remaining counts.[11]  Noting that the advisory sentence for a Class A felony was thirty years, Judge Daniel found that the aggravating factors outweighed the mitigating factors and sentenced Torres-Reynoso to thirty-five years for each of the seven Class A felony convictions, to be served concurrently—the same sentence recommended by the Probation Department.  Judge Daniel did not sentence Torres-Reynoso for the remaining six convictions, all of which were deemed to be subsumed under the Class A felony convictions.

[11]  About two weeks after sentencing, Torres-Reynoso filed a motion to correct error, alleging that Judge Daniel had been antagonistic toward and biased against him and requesting a new sentencing hearing before an impartial judge. As evidence of bias, Torres-Reynoso cited to the actions of the Judge Daniel: denying the motion to shorten time; expressing irritation at Brugh for having called Officer Eager as a fourth witness to testify about Torres-Reynoso's cooperation with law enforcement; allowing the prosecutor to reopen the court record just moments after it had been closed so that she could ensure that the trial court said "that the aggravators outweighed the mitigators"; and calling Brugh into chambers after sentencing to question why he had presented the testimony of so many law enforcement officers.  *Appellant's App.* at 106-07.

---

[11] Amended count 11 and count 15 each alleged "dealing in a substance represented to be a controlled substance." *Guilty Plea Hr'g* at 12, 18.  At the sentencing hearing, the trial court chose not to enter convictions for these two counts, stating, "The Court takes no action at this time as to amended count 11 or count 15." *Sentencing Hr'g* at 96-97, 98.

[12]     Brugh submitted an affidavit verifying each of the allegations in the motion, and providing his version of what occurred during the in-chambers meeting. In that meeting, Judge Daniel asked Brugh, "Why did we need to spend so much time on your client's cooperation with police?" *Appellant's App.* at 111. Brugh responded that the testimony was important to show that Torres-Reynoso had provided an unusually high degree of cooperation. Judge Daniel then remarked, "But there [were] so many officers [in the courtroom] who could have been out on the street." *Id.* Defending his strategy, Brugh argued that the State had made it difficult to discover Torres-Reynoso's cooperation. Apparently unconvinced, Judge Daniel inquired whether Brugh was "trying to get back at the Prosecutor." *Id.* Brugh denied any such motivation, saying, "I [personally] have nothing in this." *Id.* Brugh closed his affidavit by noting that "[a]fter a cordial exchange," Judge Daniel excused him from chambers. *Id.*

[13]     Without holding a hearing, the trial court denied Torres-Reynoso's motion to correct error in a written order. Judge Daniel provided the following reasoning: the sentencing hearing lasted more than two hours and eight witnesses were called, all by the defense; four of the witnesses were law enforcement officers, called to talk about the mitigating factor of Torres-Reynoso's cooperation with police; the State agreed that Torres-Reynoso was entitled to a finding that his cooperation was a mitigator; notwithstanding defense counsel's desire to elicit more testimony regarding Torres-Reynoso's cooperation, "no further testimony along that line was necessary; the trial court entered the sentence recommended by the Probation Department; Brugh's version of what happened in chambers,

after sentencing, "is not substantially incorrect"; the in-chambers meeting reflected the trial court's view that "a calm discussion with counsel of divergent views as to procedure can be educational and helpful to both counsel and to the Court to promote the efficient administration of justice"; and Brugh's tactics were not negatively reflected in Torres-Reynoso's sentence. *Id.* at 112-13. Torres-Reynoso now appeals.

## Discussion and Decision

## I.  Ineffective Assistance of Counsel

[14]    Torres-Reynoso asserts that his trial counsel was ineffective, and therefore, the trial court erred in denying his motion to correct error.  Specifically, he asserts that his trial counsel's performance was deficient because he did not:  (1) request that a recording be made of the in-chamber discussion; (2) request a change of judge; and (3) recognize that the nature and circumstances of his admitted crimes (*i.e.*, the number of transactions and the amount of illegal drugs involved) would be a significant aggravating factor.[12]  The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's

---

[12] Torres-Reynoso also suggests that his plea was not knowingly and intentionally made because Brugh "was under a mistaken belief that the nature and circumstances of all the charges would *not* be treated as an aggravating factor because these matter related to elements of the charges and could not be considered." *Appellant's Br.* at 17, 18.  In essence, Torres-Reynoso is challenging his conviction.  Because it is well-settled in Indiana that a person who pleads guilty cannot challenge his convictions by means of direct appeal, we do not address this issue. *Robey v. State*, 7 N.E.3d 371, 383 (Ind. Ct. App. 2014), *trans. denied*

playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result.'" *Id*. (quoting *Strickland*, 466 U.S. at 686).

[15] To prevail on a claim of ineffective assistance of counsel, a party must demonstrate both that his or her counsel's performance was deficient and that the party was prejudiced by the deficient performance. *Gallien v. State*, 19 N.E.3d 303, 307 (Ind. Ct. App. 2014), *trans. denied*. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms, *i.e.*, committing errors so serious that defendant did not have the counsel guaranteed by the Sixth Amendment. *Id*. To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). Failure to satisfy either prong will cause the claim to fail. *Id*. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id*. We find the prejudice inquiry in this case to be dispositive; therefore, we do not address the alleged deficiencies in trial counsel's performance.

[16] Torres-Reynoso claims that he was prejudiced when Brugh did not ask Judge Daniel to record the in-chambers meeting, which occurred immediately after sentencing. He argues that a defendant's right to appeal errors allegedly committed by the trial court, includes the requirement that the defendant present a complete record to the reviewing court. *Appellant's Br.* at 13. Torres-Reynoso maintains, "Without an actual recording, this Court is left with two vastly different versions of what allegedly occurred." *Id.* at 15. We disagree.

[17] Failure to have the in-chamber conference recorded resulted in no prejudice to Torres-Reynoso because the parties do not dispute what occurred during that conference. Brugh attached his affidavit to the motion to correct error, which stated that the trial judge had: called him into chambers; asked why Brugh had so many law enforcement witnesses testify as to Torres-Reynoso's cooperation with police; noted how many of the law enforcement witnesses could have been patrolling the streets; and asked if Brugh was trying to get back at the prosecutor. Brugh responded: he wanted witnesses to testify regarding Torres-Reynoso's "unusual degree of cooperation" with police; the State had made it difficult to prove Torres-Reynoso's cooperation; and he personally, "[had] nothing in this." *Appellant's App.* at 111. In his order denying Torres-Reynoso's motion to correct error, Judge Daniel specifically stated, "Mr. Brugh's version of what happened in chambers is not substantially incorrect."[13] *Id.* at 113.

---

[13] Torres-Reynoso misquotes this statement saying, "Judge Daniel stated that Brugh's version of what happened in the chambers was 'not substantially correct.'" *Appellant's Br.* at 7 (citing *Appellant's App.* at 113).

Instead of being left with what Torres-Reynoso describes as two vastly different versions of what allegedly occurred, we find that Brugh and Judge Daniel essentially agreed about the issues discussed during the in-chamber meeting. Torres-Reynoso has not met his burden of proving that he was prejudiced by the lack of a recording; accordingly, Brugh's failure to request that the meeting be recorded did not constitute ineffective assistance of counsel.

[18] Torres-Reynoso also asserts that Brugh was ineffective when he did not file a motion for change of judge pursuant to Criminal Rule 12. He contends that the following revealed that Judge Daniel was biased: ongoing antagonism toward the defense; the denial of Torres-Reynoso's motion to shorten time; irritation at Brugh having called Officer Eager as a fourth witness to testify regarding Torres-Reynoso's cooperation; allowing the prosecutor to reopen the record moments after it had been closed to ensure that the trial court said, "the aggravators outweigh the mitigators or they balance each other out in the sentence or the advisory"; and his having calling Brugh into chambers after sentencing. *Sentencing Hr'g* at 98. Regardless of whether any of this reveals that Brugh was ineffective, Torres-Reynoso has failed to show how he was prejudiced by these actions.

[19] Torres-Reynoso contends that, had Brugh filed a motion invoking Criminal Rule 12 for a change of judge, Judge Daniel would have had to: (1) treat the facts in Brugh's affidavit as true; and (2) hold a hearing to further develop the record prior to ruling on the motion. *Appellant's Br*. at 11, 12. Here, Judge Daniel did take the facts of Brugh's affidavit as true. In fact, he stated that

Brugh's version of what occurred was "not substantially incorrect." *Appellant's App.* at 113. Further, Torres-Reynoso has failed to show how his sentencing was prejudiced by the lack of a hearing. In fact, Torres-Reynoso admits that "because the sentence was discretionary, there is no way to know if he was otherwise prejudiced." *Appellant's Br.* at 12. Torres-Reynoso has not met his burden of proving that he was prejudiced by Brugh's failure to request a change of judge; accordingly, this was not evidence that Brugh was ineffective.

[20] Finally, Torres-Reynoso argues that Brugh was ineffective for not understanding that the nature and circumstances of the seven controlled buys were the "biggest aggravator." *Id*. at 16. Torres-Reynoso maintains that he was prejudiced because Brugh should have crafted a plea agreement that prohibited the trial court "from considering the enhanced circumstances from all of the charges." *Id*. at 18. Torres-Reynoso pleaded guilty to thirteen drug-related crimes, seven of which were Class A felonies; yet, he received a sentence that was only five years greater than the advisory sentence for having committed just one Class A felony. Torres-Reynoso was not prejudiced by trial counsel's representation; accordingly, we cannot say that Brugh was ineffective in his representation of Torres-Reynoso.

## II. Improper Aggravators

[21] Torres-Reynoso asserts that the trial court abused its discretion by finding that his criminal history, his prior use of illegal drugs, and his use of an alias at work were all aggravating factors. Sentencing decisions rest within the sound

discretion of the trial court and are reviewed only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. Trial courts must enter a sentencing statement whenever imposing a sentence for a felony offense, and the statement must include a reasonably detailed recitation of the court's reasons for imposing a particular sentence. *Id*. We will find an abuse of discretion if the trial court fails to enter a sentencing statement, enters a finding of aggravating and mitigating factors that are unsupported by the record, omits reasons that are clearly supported by the record and are advanced for consideration, or includes reasons that are improper as a matter of law. *Gomillia v. State*, 13 N.E.3d 846, 849 (Ind. 2014).

[22] Under circumstances when a trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id*.

[23] Torres-Reynoso contends that it was improper for the trial court to combine his pending Class A felony charge (in another county) with his two Class C misdemeanor convictions (for operating a motor vehicle while never having received a license) and conclude that Torres-Reynoso's criminal history was an

aggravating factor. Torres-Reynoso does not deny that, even without the pending felony charge, his Class C misdemeanor convictions "remained for the trial court to consider as an aggravating factor. However, whether and to what extent a sentence should be enhanced based upon an individual's criminal history hinges on the weight of the history." *Appellant's Br.* at 20 (citing *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind. 2006)). Torres-Reynoso argues that his "minor, far-removed offenses do not merit great aggravating weight." *Id.* at 21. Because this argument concerns the relative weight, rather than validity of the aggravating factor, it is not subject to review for abuse of discretion. *Anglemyer,* 868 N.E.2d at 491. The trial court properly considered Torres-Reynoso's criminal history as an aggravating circumstance.

[24] In his Presentence Investigation ("PSI") Report, Torres-Reynoso admitted that he had used marijuana and cocaine in the past. *Appellant's App.* at 21. On appeal, he concedes that a trial court may find a history of substance abuse to be an aggravating factor for purposes of sentencing. *Appellant's Br.* at 22; *see Iddings v. State*, 772 N.E.2d 1006, 1018 (Ind. Ct. App. 2002) ("Indeed, a history of substance abuse is sometimes found by trial courts to be an aggravator, not a mitigator."), *trans. denied*. Instead, Torres-Reynoso argues that his "admission to a history of drug use prior to the commission of the present charges, in and of itself, does not merit aggravating weight." *Appellant's Br.* at 22. Again, this argument concerns the relative weight rather than validity of the aggravating factor and is not subject to review for abuse of discretion. *Anglemyer*, 868

N.E.2d at 491. The trial court properly considered Torres-Reynoso's use of illegal drugs as an aggravating circumstance.

[25] Torres-Reynoso's PSI Report listed an alias. When questioned by the trial court as to the nature of the alias, Brugh stated that Torres-Reynoso had used that alias during the seven years he worked at a hog slaughtering plant. Brugh explained that the alias is "what Latinos who are illegal called in work [sic] name." *Sentencing Hr'g* at 86. Torres-Reynoso does not deny using an alias; instead, he argues that the alias was used for strictly employment-related purposes, and therefore, its use as an aggravator is not supported by the record. *Appellant's Br.* at 23.

[26] Indiana Code section 35-38-1-7.1(a) specifies eleven aggravating circumstances that a trial court may consider during sentencing. While use of an alias is not among the named circumstances, the trial court was not limited to considering only those eleven specified factors. *See* Ind. Code § 35-38-1-7.1 (criteria listed to determine aggravators and mitigators "do not limit the matters that the court may consider in determining the sentence."). Torres-Reynoso provides no authority for his suggestion that a trial court cannot consider a defendant's alias unless that alias was used in the commission of a crime. Here, the trial court heard the manner in which Torres-Reynoso used his alias. Accordingly, Torres-Reynoso's argument concerns the relative weight rather than validity of the aggravating factor and is not subject to review for abuse of discretion. *Anglemyer*, 868 N.E.2d at 491. The trial court properly considered Torres-Reynoso's use of an alias as an aggravating circumstance.

*Anglemyer* makes it clear that when imposing a sentence, a trial court "no longer has any obligation to 'weigh' aggravating and mitigating factors against each other," and thus "a trial court cannot now be said to have abused its discretion in failing to 'properly weigh' such factors." *Anglemyer*, 868 N.E.2d at 491. "[T]his is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" Ind. Code § 35-38-1-7.1(d). Here, the trial court set forth mitigating factors and aggravating factors, the latter of which consisted of criminal history, prior drug use, use of an alias, the nature and circumstances of the crime, and the number of transactions and amount of drugs involved in those transactions. Because each of those is a valid aggravator, we cannot judge the weight that the trial court assigned to each factor. Here, the trial court determined that the aggravating factors outweighed the mitigating factors. The trial court cannot be said to have abused its discretion in so doing.

## III. Inappropriate Sentence

Finally, Torres-Reynoso contends that his thirty-five-year aggregate sentence is inappropriate. Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must

give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* The "question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" allows for a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied.* It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State*, 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[29] A person who commits a Class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. In the present case, Torres-Reynoso was sentenced to an executed term of thirty-five years for each of his seven cocaine-related Class A felony convictions. The trial court ordered the sentences to be served concurrent with each other, resulting in a thirty-five-year aggregate sentence.

[30] As to the nature of the offense, Torres-Reynoso was charged with Class A felony dealing in cocaine for having sold three or more grams of cocaine to Detective Walters not just once or twice, but on six separate dates over a span

of seven months.[14] *See* Ind. Code § 35-48-4-1 (the offense of dealing cocaine in an amount of three grams or more is a Class A felony). During that time, Torres-Reynoso had more than enough time to rethink his decision to sell illegal drugs. Torres-Reynoso admitted during his guilty plea hearing that he sold Detective Walters about one ounce of cocaine on four of the six dates and that he knew that an ounce was equal to approximately 28 grams. *Guilty Plea Hr'g* at 24-26. Accordingly, on four separate occasions, Torres-Reynoso sold Detective Walters more than nine times the amount of cocaine required to commit the offense for which he was convicted. Torres-Reynoso sold not only cocaine to Detective Walters, but also marijuana in an aggregate weight of more than three pounds. Further, cocaine was found during a search of Torres-Reynoso's home—a home that he shared with his fiancée and three children. A thirty-five-year aggregate sentence was not inappropriate in light of the nature of the offense.

[31] As to the character of the offender, Torres-Reynoso focuses on his long-term employment and his ability to financially take care of his children, some of whom live in the United States and others in Mexico. He offers that he was targeted by police in the seven controlled drug buys and that his profit for the sales was no more than $1,000. Further, he argues that he cooperated with police by setting up a controlled buy with Peña. We remind Torres-Reynoso

---

[14] The charging information alleged that Torres-Reynoso delivered more than three grams of cocaine on May 10, 2013, May 24, 2013, June 10, 2013, July 16, 2013, September 29, 2013, and November 21, 2013. *Appellant's App.* at 13, 20, 22, 23, 24, and 25.

that the burden rests with him to prove to this court that the sentence is inappropriate in light of his character. *Chappell*, 966 N.E.2d at 133. Regardless of whether he was targeted by police, made little money from this enterprise, and cooperated with police, Torres-Reynoso willingly sold cocaine and marijuana, repeatedly, over a period of seven months, financially benefitted from selling these illegal drugs, and only cooperated with police after he was arrested. His criminal history, while not remarkable, consists of two Class C misdemeanor convictions for driving without being licensed, plus, at the time of sentencing, he had a pending Class A felony charge in Clinton County for dealing in cocaine. Evidence presented during the sentencing hearing revealed that Torres-Reynoso had used illegal drugs in the past, and he had used an alias while working for one of his employers. *Sentencing Hr'g* at 86, 88. Torres-Reynoso has not met his burden of proving to this court that a sentence of thirty-five years, only five years greater than the advisory sentence for just one of his seven Class A felony convictions, is inappropriate in light of the nature of the offense and the character of the offender.

[32] We conclude that the trial court did not abuse its discretion in denying Torres-Reynoso's motion to correct error.

[33] Affirmed.


Najam, J., and Barnes, J., concur.