878 N.E.2d 506 (2007)
N.W.W., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A02-0706-JV-475.
Court of Appeals of Indiana.
December 31, 2007.
Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
CRONE, Judge.

Case Summary
N.W.W. challenges the juvenile court's true finding that he committed robbery, a class B felony if committed by an adult. We affirm.

Issue
Did N.W.W. preserve any claim of error regarding the constitutionality of a show-up identification?

Facts and Procedural History
The facts most favorable to the true finding are that on the night of December 14, 2006, Tella Wright had just parked her car and was walking toward her Indianapolis apartment when she heard someone say, "[G]ive me your money." Tr. at 19. She turned around and saw a young male holding a handgun. The area was well lit, and Wright got a good look at the face of the gunman, who was only a foot away from her. Wright told the gunman not to shoot her and gave him her purse. The gunman and another person fled.
Wright entered her apartment, told family members about the incident, and called the police. Wright's nephews ran to see if they could catch the robbers. Officer Courtney Harris arrived and spoke with Wright, who described the gunman as a slender black male in his mid to late teens, approximately five feet eight inches tall, wearing dark clothing and blue-and-white tennis shoes. One of Wright's nephews told Officer Harris that he had overheard a conversation coming from an upstairs window in another apartment about a robbery that had just occurred in the area.
Officer Harris and another officer went to that apartment and knocked on the door *508 for several minutes. N.W.W.'s brother H.W. answered the door. Officer Harris asked H.W. if anyone else was in the apartment. H.W. replied that N.W.W. was upstairs asleep. Officer Harris asked if H.W. would call his mother. H.W. refused. Officer Harris asked H.W. to get his brother. H.W. tried to close the door, but Officer Harris instructed him to leave it open for officer safety.[1] Eventually, H.W. signaled to someone behind the door, and N.W.W. appeared. Fourteen-year-old N.W.W. was nervous and sweating and matched Wright's description of the gunman. Through the doorway, Officer Harris saw two pairs of tennis shoes that appeared to have fresh mud on them. N.W.W. identified the blue-and-white pair as his. Officer Harris asked H.W. and N.W.W. to step outside, and they complied.
Another officer brought Wright over. She identified N.W.W. as the person who had robbed her but could not identify H.W. as the second person involved. The officers allowed H.W. and N.W.W. to return to their apartment and transported Wright to her apartment. Approximately forty-five minutes later, the officers saw H.W. and N.W.W. outside walking back toward their apartment. The officers detained them and contacted their mother, who came home from work and consented to a search of the apartment. The officers were unable to find Wright's property or the handgun used in the robbery.
The State filed a delinquency petition alleging that N.W.W. had committed acts that would be class B felony robbery and class A misdemeanor carrying a handgun without a license if committed by an adult. At the denial hearing, Wright unequivocally identified N.W.W. as the person who had robbed her.[2] Defense counsel objected to the in-court identification, stating,
I believe it's hopelessly tainted by a two person line up um, in additionally um, uh, quite some more on that when the police officers testify we'll get that far but you can't drag two kids out of their house without a parent there and make them stand in front of somebody in a police car.
Tr. at 17. The court replied, "Well, [the] ultimate question was for [Wright] to identify [N.W.W.] in court and she did that. Whether or not uh, they're able to link that up with something else down the road I guess we'll wait and see." Id. at 18. Defense counsel made no further objections to evidence regarding the show-up identification.
After both sides rested, however, defense counsel made an oral motion to suppress the show-up identification evidence on the basis that N.W.W. was illegally seized when Officer Harris asked him to step outside for the show-up. The prosecutor objected, stating,
I believe this is an untimely motion this is a pre-trial motion it's not appropriate for him to wait and see. Um, go through his whole trial put all of his witnesses on hear all of our evidence and then decide am I going to win am I going to lose and then decide to put on a suppression hearing. I don't think that *509 this is timely [or] appropriate. I think that this is something that should have been at the beginning of the trial not after all of the evidence[.]
Id. at 140. The court replied, "[C]onstitutional issues can be raised at any [time] so there's absolutely nothing wrong with raising it now." Id. The court took the motion under advisement, allowed the parties to file written briefs, and ultimately denied the motion. The court entered a true finding on the robbery allegation and a not true finding on the handgun allegation.[3] This appeal ensued.

Discussion and Decision
On appeal, N.W.W. raises several arguments regarding the constitutionality of the show-up identification and the admissibility of that evidence. We need not address those arguments, however, because "it is well settled that where a witness had an opportunity to observe the perpetrator during the crime, a basis for in-court identification exists, independent of the propriety of pre-trial identification." Adkins v. State, 703 N.E.2d 182, 185 (Ind. Ct.App.1998). N.W.W. does not challenge the sufficiency of the basis for Wright's unequivocal in-court identification of him as the person who robbed her. The evidence regarding the show-up identification was merely cumulative of the in-court identification. "The erroneous admission of evidence that is merely cumulative of other evidence in the record is not reversible error." Beach v. State, 816 N.E.2d 57, 59 (Ind.Ct.App.2004).
Moreover, we conclude that N.W.W. waived any objection to the admissibility of the show-up identification evidence by failing to make timely and specific objections at the denial hearing. See Lewis v. State, 755 N.E.2d 1116, 1122 (Ind. Ct.App.2001) ("Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error upon appeal."); see also Moore v. State, 669 N.E.2d 733, 742 (Ind.1996) ("To preserve a suppression claim a defendant must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue. Where a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds, the defendant waives the suppression claim.") (citations omitted).[4]
We strongly disapprove of defense counsel's reliance onand the juvenile court's acceptance ofa post-hearing motion to suppress the show-up identification evidence. The purpose of the contemporaneous objection rule "is to promote a fair trial by precluding a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him." Rembusch v. State, 836 N.E.2d 979, 983 (Ind.Ct.App.2005), trans. denied *510 (2006).[5] Our supreme court has observed that "a prompt objection affords the trial court an opportunity to prevent or remedy prejudice to a defendant without the considerable waste of time and resources involved in the reversal of a conviction, and for this reason a contemporaneous objection is required as a condition to appellate review." Maldonado v. State, 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976). It is one thing for a party to make a timely objection that the trial court takes under advisement; it is quite another for a party to make an objection after his opponent rests his case and can no longer cure any alleged error. The constitutionality of the show-up identification and the admissibility of that evidence should have been litigated via a pre-hearing motion to suppress or a specific and timely objection during the State's case in chief.[6] Based on the foregoing, we affirm the juvenile court's true finding.
Affirmed.
NAJAM, J., and BAILEY, J., concur.
NOTES
[1] Officer Harris explained,

[W]e knocked on the door for several minutes before it was actually answered and um, [H.W.] was being so allusive [sic] uh, we didn't know for officer's safety reasons that since a firearm was involved if they were going to shoot the door or a window or, something of that nature.
Tr. at 54.
[2] Wright confirmed that she was "absolutely one hundred percent sure" that N.W.W. was "the man that pointed a gun at [her] and robbed [her] and took [her] purse[.]" Tr. at 28.
[3] The court stated, "Count two carrying a handgun without a license based on the testimony of [Wright] uh I'm not sure she's qualified to determine whether or not that was a firearm under the statute of a handgun so I must enter a not true finding as to count two." Tr. at 174-75; see Ind.Code § 35-47-1-6 (defining "handgun" as "any firearm: (1) designed or adapted so as to be aimed and fired from one (1) hand, regardless of barrel length; or (2) any firearm with: (A) a barrel less than sixteen (16) inches in length; or (B) an overall length of less than twenty-six (26) inches."); Ind.Code § 35-47-1-5 (defining "firearm" as "any weapon that is capable of or designed to or that may readily be converted to expel a projectile by means of an explosion.").
[4] We note that defense counsel's vague objection regarding the show-up identification, mentioned supra, was made in response to Wright's in-court identification of N.W.W., which is not challenged on appeal.
[5] In his reply brief, N.W.W. states, "Although waiver may pave an easy road for the State to prevail on appeal, it should not be casually invoked in a high stakes game of `gotcha' to forfeit significant constitutional rights." Appellant's Reply Br. at 2. We believe that defense counsel's use of the post-hearing motion to suppress was a high-stakes "gotcha" tactic that we cannot condone.
[6] We disagree with the juvenile court's blanket statement that a constitutional issue may be raised at any time. That is certainly not true with respect to constitutional issues affecting the admissibility of evidence. See, e.g., Lewis, 755 N.E.2d at 1123 (holding that appellant who filed pre-trial motion to suppress evidence allegedly obtained in violation of state and federal constitutions waived admissibility challenge on appeal by failing to object "until after the evidence had been admitted and after he had completed his initial cross-examination" of arresting officer). Also, our supreme court has stated that "[g]enerally, the failure to file a proper motion to dismiss raising [a] Constitutional challenge [to a criminal statute] waives the issue on appeal." Payne v. State, 484 N.E.2d 16, 18 (Ind.1985).