# FOR PUBLICATION



**FILED**
Mar 19 2014, 6:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL J. KYLE**
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KELLY A. MIKLOS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SHAWN LAWRENCE CORBALLY, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 41A04-1304-CR-175 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff, ) | |

APPEAL FROM THE JOHNSON CIRCUIT COURT
The Honorable K. Mark Loyd, Judge
Cause No. 41C01-1301-FA-1

**March 19, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Shawn Corbally appeals his convictions and 270-year sentence for Class A felony burglary, Class A felony rape, four counts of Class A felony criminal deviate conduct, and two counts of Class B felony criminal confinement. We affirm the convictions but revise the sentence to a term of 165 years.

## Issues

The reordered and restated issues before us are:

> I.    whether the trial court properly allowed a police investigator to relate the contents of her interview with the victim; and

> II.    whether Corbally's sentence is inappropriate.

## Facts

The evidence most favorable to the convictions is that sometime after 4:00 a.m. on the morning of July 29, 2012, M.R. was asleep in her Greenwood apartment when she was awoken by a man—Corbally—getting on top of her in her bed. Corbally, who was armed with a knife, forced M.R. to engage in numerous sex acts, including vaginal, oral, and anal sex, over the next two hours while making threats to harm M.R. or her children. M.R.'s one-year-old child was asleep in bed with M.R., while her nine-year-old child was asleep in a different room. Corbally insisted that M.R. not look at his face. However, M.R. noticed that he had a sleeve tattoo on his left arm depicting bricks and that he was wearing camouflage cargo shorts.

After a while, Corbally forced M.R. to go outside to the patio and to engage in additional sex acts. At one point, he placed the handle of the knife in her vagina. M.R.

2

hurt her knees when being forced to kneel on the patio to perform oral sex. By this point it was nearly daylight and she was able to see his face.

Corbally then forced M.R. to go to a tree near a jogging trail and told her that she was going to have to perform oral sex on him one more time before he let her go. Because the tree was in a fairly secluded area, M.R. was afraid that Corbally was going to kill her and leave her body there. Before anything more happened, however, M.R. saw another man standing outside and, after distracting Corbally by pointing the man out to him, she managed to run back to her apartment, lock the door, and eventually contact police.

M.R. was taken to the hospital, where she was examined and forensic samples were collected. Based on the description M.R. provided to police—including the fact that her assailant had a tattoo of bricks on his left arm—police soon apprehended Corbally—who has a tattoo of bricks on his left arm—and learned that he had been staying at a residence very near M.R.'s apartment on the night of the attack. M.R. subsequently picked Corbally out of a photo lineup as being her assailant. Police recovered a duffle bag belonging to Corbally and found a pair of camouflage cargo shorts in them. DNA testing revealed the presence of Corbally's seminal fluid in the samples collected from M.R. after the attack and also revealed the presence of both Corbally's and M.R.'s DNA on the camouflage cargo shorts.

The State charged Corbally with Class A felony burglary resulting in bodily injury, Class A felony rape, four counts of Class A felony criminal deviate conduct, and two counts of Class B felony criminal confinement. At Corbally's jury trial, the State first presented the testimony of M.R. During cross-examination, Corbally's attorney challenged M.R.'s

3

ability to accurately identify Corbally as her assailant and questioned the validity of the photo lineup in which she identified Corbally, but there was no accusation that M.R. had fabricated her testimony. Corbally's attorney also argued during trial that police had acted too hastily in apprehending Corbally and that the DNA evidence had somehow been contaminated or compromised.

After M.R. testified, the State also called as a witness the lead investigator in the case for the Greenwood Police Department, Patti Cummings. During direct examination, the State asked Cummings to relate what M.R. had told her about the attack during an interview conducted the day after it occurred. Corbally's attorney objected to this line of questioning, asserting that it was asking Cummings to relate hearsay. Without waiting for a response by the State, the trial court stated: "Are you going to stipulate to the credibility of the alleged victim in this case? Because if you are going to challenge her credibility then certainly the state has a right to establish that her versions of the events in question are consistent." Tr. p. 424. Corbally's attorney stated that she could not stipulate to M.R.'s credibility and withdrew her objection. Cummings then proceeded to relate the entirety of M.R.'s statements to her, which were consistent with M.R.'s testimony.

The jury returned guilty verdicts against Corbally on all eight counts. The trial court imposed sentences of forty-five years for each of the six Class A felony convictions and ordered them to be served consecutively for a total executed sentence of 270 years. It also imposed sentences of twenty years each for the two Class B felony convictions but ordered them served concurrent with each other and the Class A felony sentences. Corbally now appeals.

**Analysis**

*I. Admission of Hearsay*

The first issue we address is whether the trial court properly allowed Cummings to relate hearsay statements of M.R. We review trial court rulings on the admission of evidence for an abuse of discretion. Williams v. State, 997 N.E.2d 1154, 1160 (Ind. Ct. App. 2013). "A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law." Id.

The State contends that Corbally waived any objection to Cummings's testimony because, although counsel initially lodged an objection, she withdrew that objection after being asked by the trial court whether she would "stipulate" to M.R.'s credibility as a witness. Tr. at 424. We decline to find waiver under these circumstances. When counsel lodged a hearsay objection to Cummings's testimony, the trial court sua sponte gave clear indication that it would overrule that objection unless counsel stipulated to M.R.'s credibility. At that point, counsel reasonably may have believed it would have been pointless to maintain her objection because she was unwilling to stipulate to M.R.'s credibility. A central purpose of requiring contemporaneous objections to evidence is to permit a trial court the opportunity to prevent or remedy prejudice to a party without the waste of time and resources associated with the reversal of a conviction or judgment. N.W.W. v. State, 878 N.E.2d 506, 510 (Ind. Ct. App. 2007), trans. denied. The contemporaneous objection rule also prohibits parties from sitting idly by and appearing to consent to an offer of evidence, only to "cry foul" when the outcome goes against him. Id.

5

at 509. Here, Corbally's counsel indicated she did not "consent" to Cummings's hearsay testimony. Also, the trial court was alerted to a hearsay concern with the testimony, and it effectively ruled that it would allow the testimony unless counsel stipulated to M.R.'s credibility. To the extent Corbally's counsel then withdrew her objection, it was hardly a "consent" to Cummings's testimony, as opposed to merely refusing to accept the trial court's precondition for excluding the testimony.

Most importantly, the trial court's belief that the State was permitted to introduce prior consistent statements of M.R. into evidence, simply because counsel was unwilling to stipulate to M.R.'s credibility as a witness, was a misinterpretation of the law. In 1975, the Indiana Supreme Court established a rule "that prior out-of-court statements, not under oath, were admissible as substantive evidence if the declarant was present and available for cross examination at the time of the admission of such statements." Modesitt v. State, 578 N.E.2d 649, 651 (Ind. 1991) (citing Patterson v. State, 263 Ind. 55, 324 N.E.2d 482 (1975)). In Modesitt, the court abrogated this rule because of various additional requirements and limitations that had been added to it. In its place, the court followed Federal Rule of Evidence 801(d)(1) and held:

> [F]rom this point forward, a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person.

6

Id. at 653-54. The court stated that adoption of this rule was necessary to prevent "abuses" in the use of a witness's prior consistent statements, such as by bolstering "the testimony of what might otherwise be regarded as a weak witness" and prohibiting "[n]umerous witnesses [from testifying] to the same statement given by a particular witness, thereby creating the prohibited drumbeat of repetition." Id. at 653. Effective January 1, 1994, the court adopted Indiana Evidence Rule 801(d)(1) governing substantive admission of prior out-of-court statements by a witness, which was identical to the language in Modesitt and was still in effect at the time of Corbally's trial.[1]

In applying the Modesitt rule and Indiana Evidence Rule 801(d)(1) governing substantive use of prior consistent statements by a witness, and in particular whether there has been an "express or implied charge . . . of recent fabrication or improper influence or motive," cases have made clear that there is a difference between merely challenging a witness's credibility versus making an express or implied charge of fabricated testimony or improper influence or motive. See Horan v. State, 682 N.E.2d 502, 511-12 (Ind. 1997). If there has only been general impeachment of a witness's credibility, then prior consistent statements by the witness are hearsay and not admissible as substantive evidence. Id. Also, general attacks upon a witness's memory do not constitute a charge that the witness fabricated testimony and do not permit the admission of prior consistent statements by the witness. Thomas v. State, 749 N.E.2d 1231, 1233-34 (Ind. Ct. App. 2001); see also Lovitt v. State, 915 N.E.2d 1040, 1043 (Ind. Ct. App. 2009) (holding that challenging witness's

---

[1] As with the entirety of our evidence rules, Indiana Evidence Rule 801(d)(1) was slightly re-worded effective January 1, 2014, but the changes affect only style and not substance.

7

recall of events due to consumption of alcohol was not a charge of fabricated testimony or improper influence or motive and did not permit introduction of prior consistent statements by the witness).  In light of these holdings, it is clear the trial court erred in telling Corbally's attorney that any challenge to M.R.'s credibility allowed the State to introduce prior consistent statements by her.

We also conclude Corbally's attorney did not make any express or implied charge that M.R. fabricated her testimony or that she was acting under improper influence or motive.  In cross-examination, counsel asked M.R. about her migraine headaches and consumption of alcohol and migraine medication before the attack, suggesting they could have affected her ability to accurately identify Corbally.  Counsel also contended that the photo line-up in which M.R. identified Corbally was unduly suggestive because he was the only one of six men pictured without a shirt, and M.R. had recalled that her assailant was not wearing a shirt.  This general attack upon M.R.'s credibility and ability to accurately identify her assailant did not permit the State to "bolster" M.R.'s testimony by introduction of her prior consistent statements through Cummings's testimony.

The State posits that Cummings's testimony relating M.R.'s statements was admissible as non-hearsay "course-of-investigation" evidence, introduced to counteract Corbally's contention that the police acted too hastily in apprehending him.  "When the admissibility of an out-of-court statement received by a police officer during the course of an investigation is challenged as hearsay, the court must first determine whether the testimony describes an out-of-court statement asserting a fact susceptible of being true or false."  Hernandez v. State, 785 N.E.2d 294, 298 (Ind. Ct. App. 2003), trans. denied.  If the

8

purpose of the introducing an out-of-court statement received by a police officer is to prove the fact asserted, and the statement does not qualify as a non-hearsay statement under Evidence Rule 801(d), and there are no applicable hearsay exceptions, the statement is inadmissible hearsay. Id. If the statement is offered for a purpose other than to prove the truth of the matter asserted, courts must consider whether the fact to be proved is relevant to some issue in the case and whether the danger of unfair prejudice that may result from its admission outweighs its probative value. Id.

This court, our supreme court, and federal courts frequently have been skeptical of attempts by the State to introduce police officer testimony relating out-of-court statements under the guise of "course-of-investigation" evidence. See Kindred v. State, 973 N.E.2d 1245, 1253-54 (Ind. Ct. App. 2012), trans. denied. "While the need for this evidence 'is slight, the likelihood of misuse [is] great.'" Id. at 153 (quoting 2 McCormick on Evidence § 249 (4th ed. 1992)). "'Statements offered to show background or the course of the investigation can easily violate a core constitutional right, are easily misused, and are usually no more than minimally relevant.'" Id. at 1255 (quoting Jones v. Basinger, 635 F.3d 1030, 1046 (7th Cir. 2011)).

Here, at the very most, some of Cummings's testimony relating M.R's description of her assailant might have been related to the course-of-investigation work that led to Corbally's apprehension. Such evidence also might be related to M.R.'s identification of Corbally shortly after the incident and admissible under Indiana Evidence Rule 801(d)(1)(C). But Cummings's testimony relating M.R.'s statements went far beyond that. Instead, Cummings almost completely rehashed the grisly details of the crimes as already

9

testified to by M.R. Such evidence was entirely irrelevant to the course of the investigation, and it was not admissible as "course-of-investigation" evidence. The trial court abused its discretion in admitting this evidence.

That said, the erroneous introduction of a witness's prior consistent out-of-court statements is subject to harmless error analysis. See Willis v. State, 776 N.E.2d 965, 968 (Ind. Ct. App. 2002). When reviewing whether the erroneous introduction of evidence was harmless, we must consider whether the evidence was likely to have substantially swayed the jury's verdict. Baker v. State, 997 N.E.2d 67, 72 (Ind. Ct. App. 2013). The improper admission of evidence is harmless error if we are satisfied that the conviction is supported by such substantial independent evidence of guilt that there is little likelihood the challenged evidence contributed to the conviction. Id. In deciding whether an error contributed to a verdict, we must determine whether the erroneously admitted evidence was unimportant in relation to everything else the jury considered on the issue in question. Id.

Even if we consider that there was some improper "bolstering" of M.R.'s credibility through Cummings's testimony, there is substantial independent evidence of Corbally's guilt in this case. Corbally's main attack upon M.R's credibility was her ability to accurately pick him out of an allegedly suggestive photo line-up. However, putting aside M.R.'s ability to recall Corbally's face, she also clearly recalled the distinctive brick wall tattoo sleeve on her assailant's left arm, which Corbally had. And, most crucially, there is DNA evidence definitively tying Corbally to these crimes. Specifically, his DNA was found in seminal fluid collected from M.R. shortly after the attack, and M.R.'s DNA was

10

found on camouflage shorts belonging to Corbally that matched M.R.'s description of what her assailant was wearing. Although Corbally made some attempts at trial to attack the reliability of the DNA evidence, he fails to even acknowledge in his brief that such evidence existed, let alone that there is any reason to doubt its reliability. In sum, there is such overwhelming independent evidence of Corbally's guilt that we can safely conclude that the erroneous introduction of M.R.'s prior consistent statements into evidence through Cummings's testimony was harmless.

## II. Sentence

We now turn to whether Corbally's 270-year sentence is inappropriate. Under Indiana Appellate Rule 7(B), we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of

11

counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The facts here are undisputedly heinous, as Corbally admits in his brief. He broke into a woman's home in the middle of the night and, while armed with a knife, forced her to perform numerous sexual acts over the course of approximately two hours. Although it does not appear M.R's children actually witnessed or perceived any of the acts, Corbally did commit them in the children's presence. In fact, the one-year-old was asleep next to M.R. for some of the acts. There also is nothing positive to say about Corbally's character—quite the opposite. In 2000, he was convicted of two counts of Class A felony rape, and he was on probation for those offenses when he committed these acts against M.R. Clearly, Corbally is a threat to society and for the sake of public safety, he must be incarcerated for a very lengthy period of time.

Regardless, we are not blind to the fact that Corbally received an extremely lengthy sentence. Rule 7(B) implements this court's authority under Article 7, Section 6 of the Indiana Constitution to provide for "review and revision of sentences for defendants in all criminal cases." In exercising this review power, there is no requirement that we compare a defendant's sentence with sentences received by other defendants in similar cases.

12

Knight v. State, 930 N.E.2d 20, 22 (Ind. 2010). However, comparison of sentences among those convicted of the same or similar offenses can be a proper consideration when deciding whether a particular sentence is inappropriate. Id. Our supreme court has also stated, "Of course, a respectable legal system attempts to impose similar sentences on perpetrators committing the same acts who have the same backgrounds." Serino v. State, 798 N.E.2d 852, 854 (Ind. 2003). The Serino court observed that "very long sentences" may arise when a prosecutor has filed a "particularly muscular" charging information, by electing "to charge multiple aspects of the same event as separate counts defined by separate criminal statutes." Id. at 857. The court also noted that the commission of crimes against multiple victims may warrant lengthier sentences. Id.

In researching reported cases decided since adoption of the "inappropriate" standard for reviewing sentences, we have found that the longest affirmed sentence imposed for a single episode of sexual violence against one victim was 151 years, in Johnson v. State, 837 N.E.2d 209, 213-14 (Ind. Ct. App. 2005), trans. denied. In that case, the defendant and two cohorts carjacked a woman's vehicle, unsuccessfully attempted to force her to withdraw money from an ATM, drove her to a garage, then forced her to perform numerous sexual acts while the defendant was armed with a gun. The defendant had an extensive criminal history, including three felony convictions, consisting primarily of drug offenses. The sentences in other reported cases involving a single episode of sexual violence have generally ranged in the ninety to 150-year range. See Akard v. State, 937 N.E.2d 811, 814 (Ind. 2010) (affirming 94-year sentence and reversing this court's sua sponte increase of sentence to 118 years for two counts of Class A felony rape, one count of Class B felony

13

rape, two counts of Class A felony criminal deviate conduct, one count of Class B felony criminal deviate conduct, two counts of Class B felony confinement, and two counts of Class C felony battery, where defendant without criminal history abducted homeless woman who appeared childlike and acted out child bondage rape fantasies upon her for several hours); Alvies v. State, 905 N.E.2d 57, 64-65 (Ind. Ct. App. 2009) (affirming 110-year sentence for murder, Class A felony rape, Class B felony criminal confinement, Class B felony burglary, and Class D felony auto theft, where defendant without criminal history abducted victim from her home and, with cohorts, raped victim and then shot and killed her); Rose v. State, 810 N.E.2d 361, 368-39 (affirming 135-year sentence following guilty plea to Class A felony burglary, Class B felony confinement, two counts of Class A felony criminal deviate conduct, and three counts of Class B felony robbery, where defendant and cohort broke into house, performed various sexual acts on two victims, one of whom was pregnant and went into premature labor, and victims were robbed; defendant was sixteen and had several delinquency adjudications).; cf. Horton v. State, 949 N.E.2d 346, 349 (Ind. 2011) (revising 324-year sentence for six counts of Class A felony child molesting and three counts of Class C felony child molesting to 110 years, where defendant had no adult criminal history but he had daily for six months violently molested seven-year-old girl, causing damage to her bowels and giving her herpes).

Given our review of comparable cases, we conclude that Corbally's 270-year sentence is an "outlier" that is in need of revision. Corbally has a criminal history and specifically a criminal history involving rape, which by itself warrants a significantly longer sentence than was imposed in Akard, for example. And, of course, we need not

14

ensure that all sentences for similar acts and defendants are precisely the same. Still, Corbally's sentence is so far outside the norm for a single episode of conduct against a single victim that we choose to exercise our constitutional authority to reduce it.

We direct that Corbally's sentence be revised as follows: that his sentence for Class A felony burglary be reduced to thirty years, with the length of all the other sentences to remain unchanged; and, that his sentences for burglary, one count of Class A felony rape, and two counts of Class A felony criminal deviate conduct be served consecutively, with the remaining sentences to be served concurrently, for a total aggregate sentence of 165 years. We remand with instructions that the trial court issue an amended sentencing order and issue or make any other necessary documents or docket entries to carry out this revision.

**Conclusion**

Although the trial court erroneously allowed Cummings to relate M.R.'s prior consistent out-of-court statements to the jury, that error was harmless. We do find Corbally's sentence to be inappropriate and direct that it be revised to a term of 165 years.

Affirmed in part, reversed in part, and remanded.

BROWN, J., concurs.

ROBB, J., concurs as to Issue I and dissents without opinion as to Issue II.