# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2016, 5:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kyle Bess,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 15, 2016

Court of Appeals Case No.
09A02-1512-CR-2311

Appeal from the
Cass Superior Court

The Honorable
Richard A. Maughmer, Judge

Trial Court Cause No.
09D02-1502-F5-14

**Kirsch, Judge.**

[1] Kyle Bess ("Bess") pleaded guilty to child solicitation[1] as a Level 5 felony and was sentenced to three years executed in the Indiana Department of Correction ("the DOC"). Bess appeals his sentence and raises the following restated issue for our review: whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We reverse and remand with instructions.

## Facts and Procedural History

[3] On the night of December 29, 2014, Bess was at his home in Galveston, Indiana with his wife, Chessie Bess ("Chessie"), and his three-year-old daughter. Chessie's sister dropped off her fourteen-year-old daughter, A.W., to spend time with Bess and Chessie. Later that evening, Chessie, who worked as a stripper at Big Daddy's Show Club in Kokomo, was called into work. A.W. asked Chessie what she did at work and inquired as to what a lap dance was. Chessie loosely explained what it was and later left for work, leaving A.W. home with Bess.

[4] At some point after Chessie left, Bess asked A.W. to give him a lap dance, but A.W. refused. Bess did have A.W. sit on his lap, and he kissed her on the cheek and tickled her. Bess apologized that night for his behavior and promised A.W. that he would not do it again. A.W. left the next day and subsequently

---

[1] *See* Ind. Code § 35-42-4-6(c).

told her mother what had occurred with Bess.  A.W.'s mother contacted the police.

On February 13, 2015, the State charged Bess with one count of child solicitation as a Level 5 felony.  On August 13, 2015, Bess pleaded guilty as charged without the benefit of a plea agreement.  At the sentencing hearing, the trial court heard testimony from A.W. and her mother as to the impact the crime had on A.W.  Bess also testified about what had occurred on the night of December 29.  After argument by the State and Bess, the trial court found Bess's guilty plea, lack of criminal history, and the undue hardship that incarceration would place on his family as mitigating factors.  It found as aggravating factors the fact that Bess was blaming A.W. for contributing to the crime and that he violated a position of trust.  The trial court found that the aggravators and mitigators balanced and sentenced Bess to three years executed in the DOC.  Bess now appeals.

## Discussion and Decision

Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).  The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate.  *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).  It is the defendant's burden on appeal to persuade the reviewing court

that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[7] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[8] Bess argues that his three-year executed sentence is inappropriate in light of the nature of the offense and the character of the offender. Regarding the nature of the offense, Bess contends that, although his conviction is a felony, his actions did not result in physical harm or even physical contact with A.W. beyond brief kissing on the cheek and tickling. He also asserts that he made no threats to A.W., relented when A.W. declined his requests, and apologized to A.W. for his behavior. As to Bess's character, he claims that, based on his total lack of a criminal history, his demonstrated remorse, and his dedication to his family, his three-year executed sentence is inappropriate and should be revised. We agree.

[9] Bess pleaded guilty to Level 5 felony child solicitation. A person who commits a Level 5 felony shall be imprisoned for a fixed term of between one and six years, with the advisory sentence being three years. Ind. Code § 35-50-2-6(b).

Here, the trial court ordered Bess to serve three years all executed in the DOC.

[10]     Looking to the nature of the offense, the evidence showed that Bess requested that his niece, A.W., give him a lap dance, which she declined to do, and Bess made such request with the intent to arouse his sexual desires. Although wholly inappropriate and meeting the elements of the charged crime, Bess's crime was not "particularly odious" or "particularly repulsive" as the State contends. *Appellee'e Br*. at 9. Bess readily admitted that, while alone with A.W., he solicited her to engage in a lap dance. However, there was no evidence that Bess threatened any harm to A.W. or intimidated her at all when he made this solicitation. There was evidence that A.W. sat on Bess's lap, and he kissed her on the cheek and tickled her. The evidence also established that after A.W. declined Bess's requests, he relented. He also apologized the same night for his behavior and told A.W. it would not happen again. While we do not downplay the seriousness of Bess's crime and the negative effects it had on A.W., we conclude that there are no facts pertinent to the nature of the offense that warrant a fully executed three-year sentence.

[11]     As to Bess's character, the evidence showed that Bess had absolutely no history of delinquent behavior or criminal conduct. Prior to this present offense, he led a law-abiding life with his wife and child. Bess was only twenty-one at the time he committed the instant offense. He was employed full-time when he committed the offense and had been working at the same job for over a year. Bess was a dedicated father and husband who showed remorse, acknowledged the wrongness of his actions, and pleaded guilty without the benefit of a plea

agreement. Although Bess's conduct demonstrated an abuse of a position of trust as A.W. was his niece who was left in his care, the probation department found him to be at a low risk to reoffend. Additionally, at the time of sentencing, Bess was the sole source of income in his household as his wife was pregnant and no longer working; therefore, his incarceration created a significant hardship to his family. Thus, we find that the evidence of Bess's character does not lend itself to a wholly executed sentence.

[12] In light of the nature of Bess's offense and his character, we conclude that the trial court's imposition of a three-year sentence, all executed in the DOC, is inappropriate. We, therefore, reverse Bess's sentence and revise it such that Bess should be released from incarceration with the remainder of his three-year sentence to be served on supervised probation. *See Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010) (when conducting an appropriateness review under Indiana Appellate Rule 7(B), this court may consider all penal consequences of the sentence imposed including the manner in which the sentence is ordered served). This case is remanded to the trial court with instructions to issue an amended sentencing order and to take any actions necessary to impose the revised sentence consistent with this opinion.

[13] Reversed and remanded with instructions.

Riley, J., concurs.

Pyle, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kyle Bess, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 09A02-1510-CR-1802 |
| v. | |
| State of Indiana, | |
| *Appellees-Plaintiff.* | |

**Pyle, Judge.**

[14]     I respectfully dissent from my colleague's revision of the fully executed advisory sentence imposed by the trial court. In reviewing claims of an inappropriate sentence under Appellate Rule 7, our Supreme Court has noted:

> …whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Individual judgments as to the proper balance to be struck among these considerations will necessarily vary from person to person, and judges, whether they sit on trial or appellate benches, are no exception. There is thus no right answer as to the proper sentence in any given case.

*Cardwell v. State*, 895 N.E.2d 1219, 1223 (Ind. 2008). Because of this variation in opinion "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id*. at 1225.

[15] Trial courts are in the best position to assess the nature of an offense and a defendant's character. They get to see the facial expressions of witnesses; they get to hear the pain or remorse in the voices of victims, family members, and defendants; they get to watch body language; and they get to make judgments based on the intonation in a witness's voice. None of these critical decision making factors are reflected in the record. This is why we so often defer to a trial court's judgment. *Hunt v. State*, 43 N.E.3d 588, 590 (Ind. Ct. App. 2015) (deference must be given to trial court sentencing decisions because of their unique perspective) *trans. denied*.

[16] Here, the sentencing range for child solicitation, a Level 5 felony, is from one (1) to six (6) years, with three (3) years being the advisory sentence. INDIANA CODE § 35-50-2-6(b). After considering the evidence, the record shows that the trial court believed that the nature of this offense was very serious. In an attempt to secure a lap dance from his niece, Bess took advantage of his niece's age and vulnerability to satisfy his sexual desires. The fact that the lap dance did not happen or result in physical injury is nearly meaningless. Bess still made his niece sit on his lap, kissed her cheek, and tickled her. It is also clear from the record that his niece understood the sexual nature of what was

happening to her. *See Lasley v. State*, 510 N.E.2d 1340, 1342 (Ind. 1987) (sexual victimization of children often leaves permanent psychological damage that is more devastating than physical injuries). Further, the record shows that Bess implied that his niece contributed to the crime. (Tr. 49-56). A factor the trial court properly took into account when assessing Bess's character. (Tr. 95-96). Based on this evidence, the trial court imposed the advisory sentence of three years. As a result, I believe Bess's sentence is not an outlier and not inappropriate. I would affirm the trial court.