## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 03 2016, 5:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam G. Forrest
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Deandre Plant,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 3, 2016

Court of Appeals Case No.
89A01-1603-CR-465

Appeal from the Wayne Superior Court

The Honorable Charles K. Todd, Jr., Judge

Trial Court Cause No.
89D01-1408-MR-4

**Riley, Judge.**

STATEMENT OF THE CASE

Appellant-Defendant, Deandre Plant (Plant), appeals his sentence following his conviction for murder, a felony, Ind. Code § 35-42-1-1.

We affirm.

## ISSUE

Plant raises one issue on appeal, which we restate as: Whether Plant's sentence is appropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

On May 17, 2014, sixteen-year-old Kore Buchanan (Buchanan) learned that C.W. had allegedly sexually assaulted J.G., who was like a little sister to Buchanan. Buchanan, who had been friends with seventeen-year-old C.W. since childhood, became very upset. Later than night, Buchanan and nineteen-year-old Plant met up with Michael Pruitt (Pruitt), David Maish (Maish), and Maish's girlfriend. While together, Buchanan discussed killing C.W. for what he had allegedly done to J.G. Buchanan and Plant concocted a plan, and Plant asked Pruitt for the baseball bats that Pruitt had hidden underneath his porch. Pruitt retrieved between five and seven bats and brought them to Maish's house, where Pruitt and Maish wiped down two of the bats to remove any fingerprints. Maish provided Buchanan and Plant with latex gloves to cover up their fingerprints. He then taught Buchanan and Plant how to conceal the baseball bats in their jacket sleeves so the bats would not be noticed. Plant and

Buchanan left Maish's house with the baseball bats, while Pruitt followed behind to serve as a lookout.

[5] Plant and Buchanan went to the house where C.W. was staying and woke him up. C.W. left with Plant and Buchanan, while Pruitt continued to follow them from behind. Pretending having to urinate, Plant and Buchanan lured C.W. into an alley. Pruitt stood watch close by. As C.W. urinated, Plant and Buchanan hit him in the head and face with the baseball bats. C.W. screamed, "[F]uck, my nose, help, help, my nose." (Transcript p. 603). Buchanan and Plant continued to hit C.W. for about five minutes, during which they hit him at least seventeen separate times on his head and face, resulting in extensive facial and skull fractures with brain laceration and hemorrhage. During the beating, C.W. tried to defend himself as shown by the contusions on his leg and a fracture to his hand. C.W.'s blood loss was extensive, covering the alley with a blood splatter pattern reaching a height of six feet and a width of twenty-one feet. His cause of death was listed as massive head injuries caused by multiple blunt force trauma to his head.

[6] Afterward, Plant and Buchanan exited the alley and rejoined Pruitt. Plant boasted that "it was done" and "somebody got what they deserved[.]" (Tr. p. 605). They disposed of the baseball bats in an abandoned garage. After returning to Maish's house, Buchanan and Plant continued to brag about killing C.W. Buchanan said that C.W. "was screaming, begging me to stop and I think we kicked him and I'm pretty sure we killed him[.]" (Tr. p. 610). Buchanan appeared "shook up[,] . . . [m]ore in shock than anything" while

Plant was "[c]ool. Just like [Plant] always is." (Tr. pp. 442-43). When Plant and Buchanan returned to the house, they were covered in blood, so they showered and changed their clothes. Their blood-soiled clothing was placed in a garbage bag and hidden in Maish's basement. Some of it was later burned in a fire pit in Maish's backyard.

[7] Plant and Buchanan continued to boast about the killing to their friends. They stated that they had struck C.W. with the baseball bats "a bunch of times." (Tr. p. 448). They explained, "we swung hard, we got loose on him" and reminisced, "Do you remember when I cracked him in his nose and he was like bro, stop, my nose, my nose." (Tr. p. 738).

[8] At a certain point, Plant, Pruitt, and Maish returned to the alley to check if C.W. was still alive. After Maish could not locate C.W.'s pulse, Pruitt removed C.W.'s shoes and later disposed of them in a dumpster. Maish took photographs of C.W.'s body, "[j]ust to show people." (Tr. p. 612). After Plant instigated discussions about an alibi, they decided that they would claim to have been together at home all night and planned to post photographs on Facebook as proof. Sometime after 7:00 a.m. the following day, May 18, 2014, C.W.'s body was discovered in the alley. His face was unrecognizable and covered in blood, and his genitals were exposed.

[9] On May 25, 2014, the State filed an Information, charging Plant with murder, a felony. Following a four-day jury trial beginning on December 7, 2015, Plant was found guilty as charged. On February 1, 2016, the trial court sentenced

Plant to sixty-one years of imprisonment, with three years suspended to probation.

[10]    Plant now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

[11]    Plant contends that his aggravated sixty-one-year sentence is inappropriate in light of the nature of the offense and his character and requests the imposition of the advisory sentence of fifty-five years executed. "[S]entencing is primarily a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 121 (Ind. 2015). Therefore, even where, as here, a trial court imposes a sentence that is authorized by statute, our court may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[12]    Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Nevertheless,

"whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. On review, we focus on "the length of the aggregate sentence and how it is to be served." *Id.* Plant bears the burden of persuading this court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).

[13] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his murder conviction, Plant faced a sentencing range of forty-five to sixty-five years, with the advisory being fifty-five years. *See* I.C. § 35-50-2-3. Although Plant received an aggravated sentence, his sixty-one-year sentence is four years below the maximum penalty with another three years suspended. The trial court imposed this lengthy sentence after characterizing the murder as a "savage beating" and "a senseless, violent act showing no respect for human life." (Tr. p. 964).

[14] Turning to the nature, we find that this offense was unquestionably horrific. Nineteen-year-old Plant, together with sixteen-year-old Buchanan, beat seventeen-year-old C.W. in his face and head with baseball bats until he died. The savagery of the beating was such that his face had become unrecognizable and C.W. could only be identified by his tattoo. Despite C.W.'s screams for help and pleas for mercy, Plant, Buchanan, and Pruitt left him in the alley to bleed to death. After the murder, Plant actively took steps to avoid detection by

disposing of the baseball bats, showering, and hiding his bloody clothing, as well as conspiring with others to fabricate an alibi. Notwithstanding these efforts to conceal, Plant could not resist boasting about his deed and even took other individuals to the scene of the crime to view his victim.

[15] On appeal, Plant wisely does not attempt to portray his crime in a positive light. He rightly recognizes that "the nature of the underlying offense is not one which can be easily overlooked" and acknowledges that he participated in a "savage attack and murder of another human being." (Appellant's Br. pp. 7 & 11). Regardless of Plant's assertions that he did not instigate or initiate the attack, steal from the victim or photograph his body, the evidence presented at trial established that he was more than a willing and eager participant in this brutal crime and exhibited a complete lack of restraint or compassion towards C.W. He purposefully armed himself and learned how to conceal the baseball bat in his sleeve. He then intentionally woke C.W. up at another house and lured him to his merciless death in the alley. We agree with the State that Plant "appointed himself executioner" of his friend with a complete disregard for C.W.'s life. (Appellee's Br. p. 16). This was a particularly callous, meticulously planned, and brutal murder.

[16] With respect to his character, Plant offers no examples of "substantial virtuous traits or persistent examples of good character." *Stephenson*, 29 N.E.3d at 121. Although Plant was nineteen at the time of the murder, he had already accrued a criminal history, comprising of four misdemeanor convictions. His convictions entailed a battery conviction, a failure to appear, resisting law

enforcement, and a conviction for criminal mischief. As a juvenile, he had two adjudications, one of which was a battery, a Class B misdemeanor if committed by an adult. He also had criminal charges pending at the time of sentencing in the present case, including one committed while he was in jail awaiting trial. Even though these are misdemeanor convictions, these are violent crimes and indicative of a disdain for authority. Accordingly, within a very short period of becoming an adult, he committed escalating crimes of violence, culminating in murder.

[17] Plant contends that his "character must be viewed in the context of his upbringing and mental health." (Appellant's Br. p. 10). Specifically, Plant points to his removal from his mother's care at the age of eight; his placement in foster care and various institutions until adulthood; his sexual molestation by a family member; and his mental illness diagnosis. Plant maintains that viewing his character in this light should persuade us to "conclude that although his character may be flawed, it is not of such a nature to warrant a sentence in excess of an advisory sentence." (Appellant's Br. p. 11). We are not so persuaded. While Plant undoubtedly had a difficult upbringing, many defendants who had challenging childhoods do not commit the kind of brutal and calculated crime that Plant did. Moreover, the trial court noted, as we do, that no nexus was ever established between "the actions [Plant] took in May of 2014 in this offense and the mental health condition that may have existed of [Plant] at the time of the offense[.]" (Tr. p. 970). "Additionally, there is no testimony or evidence as to what substantial treatment [Plant] had regarding

these matters subsequent to that assessment, what treatment he may have been offered and refused and so forth. The [c]ourt is left, respectfully, with tremendous speculation regarding these matters[.]" (Tr p. 970).

[18] With his nineteen years of age, Plant was the oldest of all defendants charged and had the best opportunity to stop this senseless murder; instead he became one of the main instigators by bludgeoning C.W. until his face and head were unrecognizable and leaving him to die in a dark alley. Mindful of the horrendous nature of the crime and Plant's character, Plant fails to persuade us of any virtuous traits or circumstances that would in any way justify a downward revision of his sentence.

## CONCLUSION

[19] Based on the foregoing, we hold that Plant's sentence is appropriate in light of the nature of the offense and his character.

[20] Affirmed.

[21] Bailey, J. and Barnes, J. concur