## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2017, 7:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lisa M. Pace,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 23, 2017<br><br>Court of Appeals Case No.<br>72A04-1701-CR-212<br><br>Appeal from the<br>Scott Circuit Court<br><br>The Honorable<br>Roger L. Duvall, Judge<br><br>Trial Court Cause Nos.<br>72C01-1011-FC-22<br>72C01-1303-FC-6<br>72C01-1610-F6-278 |

**Kirsch, Judge.**

[1] Lisa M. Pace ("Pace") pleaded guilty to two counts of Class C felony assisting a criminal,[1] one count of Class A misdemeanor theft,[2] one count of Level 6 felony possession of a narcotic drug,[3] and to violating the terms of her probation. As a result of this guilty plea, she was sentenced to an aggregate executed sentence of five years and 270 days. Pace appeals and raises the following issue: whether her sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] In November of 2009, Pace was living with her then-boyfriend, Bobby Riley ("Riley"), in Austin, Indiana. On November 24, 2009, Paul Graupe ("Graupe") came to Riley's residence to collect money that Riley owed him. Riley and Graupe went to a detached building behind the house. Some time passed, and Pace also went to the building. When she entered, she saw Riley strangling Graupe, which resulted in Graupe's death. While Riley concealed Graupe's body, Pace cleaned up the blood from the scene, and Riley and Pace both took money from Graupe's body, which they used to buy drugs.

---

[1] *See* Ind. Code § 35-44.1-2-5.

[2] *See* Ind. Code § 35-43-4-2.

[3] *See* Ind. Code § 35-48-4-6.

[4]     Two days later, Austin Police Department Officer Shawn Hurt ("Officer Hurt") spoke with Riley and Pace and asked them if they knew of Graupe's whereabouts. Riley and Pace told Officer Hurt that they had a short conversation with Graupe on November 24, and they last saw him when he walked away down the street from Riley's residence. The next day, Detective Lonnie Noble interviewed Pace alone, and she told the detective the same story. On December 3, 2009, Indiana State Police Troopers interviewed Pace at the post in Sellersburg, and she again gave basically the same information.

[5]     In late September or early October 2010, Pace's mother took her to an arranged meeting at the Scott County Fairgrounds, where Pace was interviewed by FBI Special Agents Bon Amick and Todd Brown and private investigator Arland Caffee. Pace told the men that she, Riley, and Graupe were at Riley's house on November 24, 2009 and that she and Riley wanted pizza, but Graupe did not, so he left. After eating pizza, Pace and Riley went to Hardy Lake to go fishing, and while at the lake, Pace saw Graupe with two other men. Pace claimed that the two men had a rope around Graupe's neck and were hurting Graupe. Pace said she then ran back to the vehicle and told Riley that she did not want to go fishing and wanted to go home. Pace told the agents she never told Riley what she had witnessed at the lake.

[6]     On December 19, 2011, Pace was sentenced to 507 days of probation for a theft conviction under Cause Number 72C01-1011-FC-22 ("Cause 22"). On May 3, 2012, while on probation under Cause 22, Pace was arrested for forgery and posted bond and was released. Pace was again arrested on September 6, 2012

for violating home detention. After spending six weeks in jail, Pace spoke with law enforcement on November 20, 2012 and confessed to her role in the murder of Graupe. On March 7, 2013, the State charged Pace under Cause Number 72C01-1303-FC-6 ("Cause 6") with two counts of Class C felony assisting a criminal, one count of Class D felony obstruction of justice, one count of Class D felony theft, and one count of Class A misdemeanor failure to report a body.

[7] In November of 2015, Pace married another man. On October 2, 2016, Pace was caught shoplifting items from Walmart, and during the course of the investigation, the police found Oxycodone in her possession. On October 3, 2016, the State charged Pace with two counts of Level 6 felony possession of a narcotic drug, one count of Class A misdemeanor theft, and one count of Class A misdemeanor possession of a controlled substance in Cause Number 72-C01-1610-F6-278 ("Cause 278").

[8] On November 1, 2016, Pace entered into a plea agreement in Cause 22, Cause 6, and Cause 278, in which she pleaded guilty to violating her probation in Cause 22, to two counts of Class C felony assisting a criminal in Cause 6, and to Level 6 felony possession of a narcotic drug and Class A misdemeanor theft in Cause 278. At her sentencing hearing, the trial court ordered Pace to serve 270 days executed under Cause 22, concurrent sentences of four years for each count of assisting a criminal under Cause 6, and concurrent one-year sentences for her convictions under Cause 278. The trial court ordered the sentences in Cause 22, Cause 6, and Cause 278 to be served consecutively for an aggregate sentence of five years and 270 days executed. Pace now appeals her sentence.

# Discussion and Decision

[9] Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[10] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[11] Pace contends that her sentence is inappropriate in light of the nature of the offense and the character of the offender. She specifically asserts that her five-

year executed sentence[4] under Cause 6 and Cause 278 is inappropriate because the conduct that supported her convictions for assisting a criminal was motivated by self-preservation and protection of her family due to her fear of Riley and his threats to hurt her and her family. Pace also claims that her sentence is not appropriate because, although she did not inform law enforcement of her knowledge of Graupe's murder when she first spoke with them in 2009, she points to the fact that it was her assistance that finally led to the discovery of Graupe's body. Pace further maintains that her conduct supporting her convictions for assisting a criminal "did not exceed the bounds of the conduct proscribed by the legislature." *Appellant's Br*. at 16. She additionally contends that her convictions under Cause 278 do not warrant the sentence ordered because nothing in the conduct was particularly egregious. As to her character, Pace argues that, at the time of her sentencing, she had substantially turned her life around and expressed remorse for her conduct, and her sentence of five years is, therefore, inappropriate.

[12] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (citing *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007)). Here, Pace pleaded guilty to two counts of Class C felony assisting a criminal, one count of Level 6 felony possession of a narcotic drug, and one count of Class A misdemeanor

---

[4] Pace is not challenging the 270-day sentence she received for violating her probation under Cause 22.

theft. A person who commits a Class C felony shall be imprisoned for a fixed term of between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6(a). A person who commits a Level 6 felony shall be imprisoned for a fixed term of between six months and two and one-half years, with the advisory sentence being one year. Ind. Code § 35-50-2-7(b). A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one year. Ind. Code § 35-50-3-2. Here, the trial court sentenced Pace to two four-year concurrent sentences for her convictions of assisting a criminal under Cause 6 and two one-year concurrent sentences for her convictions under Cause 278 and ordered the sentences to be served consecutively for an aggregate sentence of five years.

[13] As to the nature of the offense underlying her convictions for assisting a criminal, Pace witnessed her boyfriend, Riley, murder Graupe in 2009. After Riley killed Graupe, Pace helped conceal evidence of the crime by cleaning up blood at the murder scene and hiding Graupe's belongings. For the next three years, Pace repeatedly lied to the police about what happened to Graupe. Initially, she told police that the last time she saw Graupe he was walking away from Riley's house on November 24, 2009. She then changed her story to implicate two innocent men in the murder of Graupe. As a result, the police spent a significant amount of time following Pace's false lead. This dishonesty by Pace, not only cost the police three years of time, money, and effort, it also caused three years of further pain and suffering for Graupe's family. Although Pace contends she only misled the police due to her fear of Riley, the evidence

showed that she met with police several times alone and separate from Riley in the intervening three years after the murder, but she still continued to lie about what happened to Graupe. As to the nature of the offense underlying her convictions for possession of a narcotic drug and theft, Pace was caught shoplifting items from Walmart, and during the course of the investigation, the police found Oxycodone in her possession. At the time of these crimes, Pace was on probation.

[14] As to her character, Pace pleaded guilty to four criminal offenses and a probation violation under her current plea agreement. She had initially been charged with two counts of Class C felony assisting a criminal, one count of Class D felony obstruction of justice, one count of Class D felony theft, and one count of Class A misdemeanor failure to report a dead body under Cause 6 and two counts of Level 6 felony possession of a narcotic drug, one count of Class A misdemeanor theft, and one count of Class A misdemeanor possession of a controlled substance under Cause 278. Pace also had previously been charged with forgery, theft, and escape and had pleaded guilty to theft under Cause 22. At the time she committed the crimes under Cause 278, Pace was on probation, which she had previously violated. Although Pace apologized to Graupe's family at sentencing, she deliberately misled police about what had happened to Graupe for three years and even implicated innocent men in his murder. Pace only pleaded guilty to four of the multiple crimes she was charged with under Cause 6 and Cause 278, and she received the advisory sentences for the crimes to which she pleaded guilty. We conclude that her five-year sentence is not

inappropriate in light of the nature of the offense and the character of the offender.

[15] Affirmed.

Najam, J., and Brown, J., concur